In re **FIRST COMMODITY CORP. OF BOSTON, CUSTOMER ACCOUNTS LITIGATION.**

**No. MDL–713.**

United States District Court,
D. Massachusetts.

April 20, 1988.

Edward F. Haber, Boston, Mass., for plaintiffs.

A. Hugh Scott, Choate Hall & Stewart, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

WOLF, District Judge.

### I. INTRODUCTION

First Commodity Corporation of Boston ("FCCB") has moved, pursuant to the All Writs Act and the Federal Anti–Injunction Act, for a stay of all proceedings brought against it by former customers until this court decides whether to approve finally a proposed settlement of this conditionally certified customer class action, which is now being considered by members of the class. Hearings concerning this motion were held on April 7 and 18, 1988. For the reasons explained below, the court has decided: (a) to deny the request to stay parallel state court litigation; (b) to deny the request to stay Commodities Future Trading Commission ("CFTC") reparation matters; (c) to vacate its October 9, 1987 Order enjoining FCCB from paying judgments without court approval; (d) to require that all federal litigation seeking to enforce CFTC reparation decisions pursuant to 7 U.S.C. § 18(d) be referred to this court for decision; (e) to require that no bankruptcy proceedings concerning FCCB be initiated without the prior approval of this court; and (f) to require that no action seeking to restrict the $5,300,000 placed in escrow to fund the proposed settlement be initiated without the prior approval of this court.

### II. BACKGROUND

On September 30, 1987, this court conditionally certified two classes for settlement purposes in this multidistrict customer litigation against FCCB. *See* Opinion of September 30, 1987. Each class includes customers who invested money with FCCB from December 1, 1979 through April 20, 1988. One class is a mandatory class, from which customers may not opt-out, for all claims against the owners and certain officers of FCCB, and against FCCB itself for

damages in excess of actual damages such as punitive damages. The other class relates to claims of customers for actual damages against FCCB and its salespeople; members may opt-out of this class and pursue their claims for actual damages independently. These classes are more fully described in the Notice of Class Action, Proposed Settlement, and Settlement Hearing (the "Notice") which has recently been sent to all class members, and is attached as Exhibit A hereto.

A $5,300,000 escrow account has been established by FCCB, its principal owners, Don and Richard Schleicher, and a former officer, Hendrik Maas, to fund the proposed settlement.

In conditionally certifying the class action, the court determined that the proposed settlement merits consideration as a possibly fair, reasonable and adequate resolution of customer claims against FCCB.

In July, 1987, the court expressed an intention not to approve preliminarily a proposed settlement which would not have permitted customers to opt-out to pursue claims for actual damages in National Future Association ("NFA") arbitration proceedings, in CFTC reparation proceedings, or in civil litigation. The court also resisted a September, 1987 request by FCCB to stay all parallel proceedings pending a decision whether to approve finally a revised proposed settlement. Although the requested stay was originally a condition of the proposed settlement, FCCB did not insist upon the stay when the court expressed strong reservations concerning it.

On October 9, 1987, however, the court did, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), issue an Order enjoining FCCB from paying any final judgments without the approval of this court. One of the purposes of the October 9, 1987 Order was to afford the court the opportunity to determine whether payment· of such judgments would seriously impair its authority or flexibility to approve and implement the proposed settlement.

As described in the Notice, the parties and the court have made enormous efforts in connection with the evolution of the proposed settlement and, since September 30, 1987, in determining whether certain conditions of the proposed settlement have been met. The most important condition was the requirement that the Schleichers and FCCB establish that a limited fund exists by showing that their combined net worths do not exceed $11,000,000. As described in the Notice, an audit of FCCB disclosed a negative net worth. Investigation disclosed that the Schleichers' combined net worth was about $9,500,000. Thus, plaintiffs' class counsel were satisfied that payment by the Schleichers of $5,150,000 to fund the proposed settlement was acceptable and desirable. Their reasons for this conclusion included, among other things, recognition that judgments obtained against FCCB might be worthless because FCCB has no appreciable assets and there may be particular problems in seeking to recover against the Schleichers personally. *See* Notice *infra*, at 296–97.

The intensive efforts to satisfy the conditions for distributing the proposed settlement for consideration by the class were interrupted in December, 1987 when three customers filed a Petition for Involuntary Bankruptcy against FCCB. The filing of the bankruptcy action had the effect, among other things, of automatically staying all civil proceedings, including the multidistrict litigation, and reparation and arbitration proceedings. This court revoked the reference of that matter to the Bankruptcy Court. It was soon evident that the Petition for Involuntary Bankruptcy was deficient. After a meeting with the court, the Petitioners dismissed the bankruptcy action and paid FCCB $7500 to obtain a dismissal of FCCB's counterclaim against them.

On March 24, 1988, the Notice and Proof of Claim were sent to more than 40,000 FCCB customers. As described in the Notice, a rigorous series of deadlines are now in operation. If customers wish to object to the proposed settlement or to class treatment, or to request exclusion from the actual damage class, they must do so by May 13, 1988. The decision whether to participate in the proposed settlement may

present class members with difficult or distasteful choices because of certain grim realities concerning FCCB which are described in the Notice. In any event, after May 13, 1988, FCCB has thirty days to attempt to settle the claims of customers who have opted-out. If the cost of doing so exceeds a certain amount, FCCB may withdraw from the settlement. If the proposed settlement has not been aborted, after additional scheduled briefing, a hearing to consider whether the settlement should be finally approved will be held on July 7, 1988.

On March 28, 1988, FCCB renewed its request for a stay, pursuant to the All Writs and Anti–Injunction Acts, of all reparation actions, arbitration actions, and state and federal court actions involving claims of class members. The stay, if granted, would enjoin all such actions pending the court's final determination on whether to approve the proposed settlement. The stay would also, among other things, preclude customers with judgments against FCCB from obtaining enforcement orders or executions, and prevent the reinstitution of bankruptcy proceedings concerning FCCB.

The NFA, the CFTC, and several customers have objected to the requested stay. A hearing was held on April 7, 1988. The court recessed the hearing so that the parties could attempt to narrow their disputes. The hearing was continued on April 18, 1988, when FCCB and the court learned for the first time that the CFTC had decided to abandon its established appellate process and summarily dismiss all of FCCB's approximately fifty appeals of adverse initial decisions.

For the reasons described below, the court has determined that it is not necessary or appropriate to stay the pending reparation and arbitration proceedings or the pending civil litigation. In addition, as the opt-out period for the actual damage class is now operative, the court will vacate its October 9, 1987 Order enjoining FCCB from paying judgments without court approval. Thus, customers with judgments for actual damages may, if they wish, opt-out of the conditionally certified actual damage class and seek to collect on those judgments or to settle their disputes with FCCB.

On April 18, 1988, however, the court orally enjoined the initiation of any bankruptcy proceeding concerning FCCB, or any effort to attach or otherwise restrict distribution of the escrow fund established as part of the preliminarily approved settlement, without the prior approval of this court. There has already been one vexatious attempt to place FCCB in bankruptcy. In the present posture of this multidistrict litigation, another such effort, or an attack on the escrow fund, could seriously impair the court's authority and flexibility to consider, possibly approve finally, and implement the proposed settlement. Such actions would also have devastating implications for the more than 40,000 customers who must act on the rigid schedule established by the Notice.

In addition, the court is today ordering that all efforts to enforce CFTC reparation awards pursuant to 7 U.S.C. § 18(d) (§ 14(d) of the Commodities Exchange Act) be decided by this court.

## III. DISCUSSION

### A. *The Applicable Standards*

The All Writs Act, 28 U.S.C. § 1651(a), provides, in pertinent part, that:

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

The All Writs Act empowers a federal court "to issue such commands ... as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued...." *U.S. v. New York Telephone Co.*, 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977). Thus, the All Writs Act permits the fashioning of "extraordinary remedies where the need arises...." *Pennsylvania Bureau of Correction v. U.S. Marshal Service*, 474 U.S. 34, 106 S.Ct. 355, 361, 88 L.Ed.2d 189 (1985). It is, however, a residual source of

authority to issue writs that are not otherwise covered by statute, and does not authorize courts "to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Id.*

In addition to the All Writs Act which applies to all parallel proceedings, the question of staying state court proceedings is influenced by the federal Anti–Injunction Act, 28 U.S.C. § 2283, which provides:

> A court of the United States may not grant an injunction to stay proceedings in a state court except (i) as expressly authorized by Act of Congress, or (ii) where necessary in aid of its jurisdiction, or (iii) to protect or effectuate its judgments.

The analysis concerning whether a stay is appropriate is essentially the same under the All Writs Act and the Anti–Injunction Act. *See In re Baldwin United Corp.*, 770 F.2d 328, 335 (2d Cir.1985) (cases interpreting the exception for injunctions "necessary in aid of [the federal court's] jurisdiction" clause of the Anti–Injunction Act "have been helpful in understanding the meaning of the All Writs Act."). In both instances the focus is upon the effect on the federal court's jurisdiction, and its practical ability to decide a case and effectuate its judgment.

■ More specifically, a stay or injunction is appropriate if necessary to prevent a parallel proceeding "from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coastline R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970) (dicta); *James v. Bellotti*, 733 F.2d 989, 993 (1st Cir.1984); *In re Baldwin–United*, 770 F.2d at 335; *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332, 1334 (5th Cir.1981). Stays or injunctions are particularly appropriate when parallel proceedings have been determined to be vexatious or harassing efforts to undermine matters substantially resolved by the federal court. *See In re*

*Baldwin–United*, 770 F.2d at 337; *In re Corrugated Container*, 659 F.2d at 1335.

### B. *The Civil Litigation*

■ There are now pending approximately fifty federal civil cases brought by customers against FCCB. The great majority are assigned to this court as part of the multidistrict litigation. These federal cases are, in effect, already stayed pending a final decision concerning approval of the settlement. The remaining federal civil cases do not appear to present a serious potential threat to the court's ability to approve and, if appropriate, implement the proposed settlement.

There are also about twelve civil cases brought against FCCB, by customers, in various state courts. Although little specific information has been provided, it is likely that many of them seek recovery for more than actual damages, including claims for punitive damages. Present claims against FCCB for more than actual damages will be extinguished if the proposed settlement is finally approved because customers may not opt-out of the mandatory class for claims for more than actual damages. Thus, litigation of those claims in the next several months may prove to be a waste of time and money. While this consideration militates in favor of a stay, the court has concluded that such a stay should be sought in the appropriate state courts, rather than imposed by this federal court.

The cases pending in the state courts do not represent a vexatious effort to interfere with the federal litigation or the proposed class settlement. They are apparently largely cases which pre-dated the preliminary approval of the settlement and represent good faith efforts of customers to vindicate their perceived rights.

In addition, it does not appear that the state court litigation threatens to seriously impair this court's flexibility to decide the multidistrict litigation and implement its judgments. There has not been, to the court's knowledge, any effort in state court to enjoin this federal litigation or the proposed settlement. *Compare In re Corrugated Container*, 659 F.2d at 1335.

Nor does it appear that the progress of the state cases provides an imminent threat to the $5,300,000 in escrow as a *res* to fund the settlement if it is finally approved. As explained in the September 30, 1987 Opinion preliminarily approving the settlement and in the Notice (*infra*, at 296–97), in view of the limited fund which appears to exist, a mandatory class for claims in excess of actual damages has been preliminarily deemed reasonable in part because this device should assure that the early recovery of punitive damages by a few claimants will not deplete the assets required to compensate many other customers for at least a portion of their actual damages. There has not, however, been a showing of an imminent threat of a depleting judgment posed by the civil cases in the state courts. Nor is there any indication that any of the cases pending in state court are being expedited with a view to injuring the efficacy of the proposed settlement. In addition, as explained below, the court has enjoined any effort to restrict distribution of the escrow fund without prior approval of this court. This should adequately protect this court's authority and flexibility concerning that *res.*

■ Recognition of the vital role of the states in our federal system and considerations of comity—which this court hopes the relevant state courts also respect—suggest that a federal court should enjoin a parallel state proceeding only in truly exceptional, threatening circumstances. As the Supreme Court has stated, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atlantic Coastline R.R.*, 398 U.S. at 297, 90 S.Ct. at 1748. It is, therefore, not now appropriate to grant the request for a stay of the state court proceedings.

## C. *The NFA and CFTC Proceedings*

■ At the April 7, 1988 hearing, it appeared that the most meaningful issues presented by FCCB's request for a stay related to the pending NFA arbitration and CFTC reparation proceedings. Such proceedings are designed to provide customers with meritorious claims with efficient means of recovering actual damages only. The court preliminarily approved the proposed settlement now being considered by FCCB customers in part because—unlike its predecessor—it permits customers to opt-out of the actual damage class and utilize the reparation and arbitration mechanisms if they consider it in their interest to do so.

FCCB has requested a stay of reparation and arbitration proceedings until the question of final approval is resolved. The court views it as premature to consider now whether to issue a stay which would extend beyond May 13, 1988, the time by which customers must decide whether to exclude themselves from the actual damage class.

As the court stated at the April 7, 1988 hearing, however, there are certain advantages to a suspension of activity in reparation and arbitration matters until after May 13, 1988. A continuance of pending hearings and appeals would permit former FCCB customers to consider properly whether to participate in the class settlement without having to be concerned about preparing for their upcoming arbitration or reparation proceedings. In addition, a suspension of activity by the NFA and CFTC would prevent the waste of time, energy, and money involved in the consideration of claims which will be extinguished if customers do not opt-out of the actual damage class and the settlement is finally approved. The requested stay, or its voluntary equivalent, would also allow the two remaining employees of FCCB to devote their attention to FCCB's duties regarding the settlement.

On April 7, 1988, the court recognized, however, that while the foregoing considerations made a suspension of NFA and CFTC proceedings valuable, they might be insufficient to warrant a court-ordered stay. Thus, the court recessed the hearing so the NFA and CFTC could consider whether a voluntary suspension of their

proceedings, at least until May 13, 1988, would be appropriate.

The NFA has since decided that to provide claimants a full opportunity to consider the propriety of participating in the class action settlement, it would voluntarily continue all scheduled arbitration hearings, unless informed that a claimant had opted-out of the actual damage class and wished to proceed before the NFA. A lucid letter to this effect, attached as Exhibit B hereto, *infra* at 307, was sent to all of the affected individuals. As FCCB acknowledged at the April 18, 1988 hearing, this commendable action by the NFA eliminates the necessity of considering further a stay as against the NFA.

The response of the CFTC to the court's request, however, was decidedly different. The CFTC required FCCB to file a petition for a temporary stay of its reparation proceedings. Although all affected claimants had notice of the motion for a stay pending in this court, and fewer than four objected to it, the CFTC later required FCCB to serve several hundred individuals with the petition and has deferred any action on it.

In addition, unknown to FCCB or the court until April 18, 1988, on April 8 the CFTC, at its own initiative, issued an order abandoning its established appellate procedures and dismissing summarily all of FCCB's approximately fifty appeals. *See* Opinion and Order in *Aten v. First Commodity Corporation of Boston, et al.,* CFTC Docket No. 85–R12. One effect of this Order is to accelerate the very matters this court has been considering staying.[1]

If the CFTC's action was taken in good faith, it seems to have been based upon the apparently mistaken understanding that FCCB had "admitted that it will not pay reparation awards that became final after July 15, 1987." *Aten* Opinion and Order, p. 6. In effect, the CFTC's action punishes FCCB for complying with this Court's October 9, 1987 Order requiring court approval to pay judgments—an order which is, in any event, being vacated today. In addition, the CFTC decision overlooks the intention FCCB has often expressed to this court to deal in an orderly fashion with individuals with reparation judgments who opt-out of the actual damages class.[2]

The CFTC decision in *Aten* apparently has the effect of summarily completing about fifty appeals at a time when the CFTC knew that this court was deferring a decision on whether to stay those matters pending a further response from the CFTC, among other things. This suggests that the considerations of comity which have caused this court to be reticent about issuing a stay which would have the effect of suspending the activities of an agency of the Executive Branch are not reciprocated. The CFTC actions may also have the effect of increasing objections to the class settlement and opt-outs which will be so expensive to resolve that FCCB will be permitted to withdraw from the settlement.

The court now has the authority to stay temporarily all CFTC proceedings concerning FCCB. This matter is distinguishable from the case of *First Commodity Corporation of Boston v. Commodity Futures Trading Commission,* 644 F.Supp. 597 (D.Mass.1986). The temporary stay now being considered would not be based upon the merits of pending CFTC proceedings or encroach upon the Court of Appeals' exclusive jurisdiction to review the merits of

---

1. Another effect of the summary dismissal of all appeals is to deprive FCCB of the established, efficient procedure to raise what may be meritorious claims. For example, FCCB asserts that in one case it has presented the CFTC with the endorsed refund check which the customer claims he never received. *See* Exhibit B to First Commodity's Supplemental Memorandum in Support of Stay of CFTC Reparations concerning *Heilman v. First Commodity Corporation of Boston, et al.,* CFTC Docket No. 87–R65.

2. There is irony in the CFTC's present ardor to protect customers who invested in FCCB since 1979. Prior to 1979, the CFTC twice investigated FCCB and each time resolved the matter by entering into Consent Decrees which the CFTC's recent reparation awards based on findings of fraud indicate were ineffective. It appears that a more timely, energetic, and able effort by the CFTC would have prevented the numerous problems now being addressed in this multidistrict litigation, in reparation and arbitration proceedings, in CFTC enforcement proceedings, and in Mid–American Exchange proceedings against FCCB.

CFTC decisions. In addition, there is in this case a *res* existing as a result of a class action settlement in its advanced stages which would make it reasonable for the court to exercise its authority under the All Writs Act. *See In re Baldwin–United,* 770 F.2d at 337.

Nevertheless, the court has determined not to stay reparation matters between now and May 13, 1988. The proposed settlement permits reparation claimants to opt-out by May 13, 1988. As indicated earlier, a stay of proceedings until then would have several salutory effects. However, the court is not yet persuaded that a continuation of the reparation process will seriously impair its authority or flexibility to decide this case.

This case is quite close to *In re Baldwin–United,* in which a stay was granted. There are, however, some meaningful differences. The claimants in the FCCB reparation proceedings did not bring their actions to frustrate the settlement of this class action. Many such claims apparently preceded preliminary approval of the settlement.

Nor are individuals who opt-out and pursue reparation awards seeking to relitigate disputes already resolved in this conditionally certified class action. Rather, they are exercising a right whose existence contributed to the court's preliminary conclusion that the proposed settlement was fair, reasonable and adequate.

The continued—indeed accelerated—rendering of judgments against FCCB may encourage objections to the class settlement. It may also abet opt-outs whose claims are so expensive to resolve that FCCB will be authorized, and decide, to withdraw from the settlement. But objections, opt-outs and withdrawal are permitted by the settlement.

The court believes the settlement merits serious consideration by the customer class. The court is distressed that the CFTC seems to be manipulating its established processes to influence the decisions of a select group of class members, whose actions may affect the rights of many others. An unnecessary stay, however, might create conditions which will make the settlement more attractive to that same select group. The court is wary of exerting such influence.

Although it is a close question, at this point the court is not persuaded that a continuation of reparation actions will seriously impair the court's authority and flexibility to resolve the merits of this case and effectuate its judgments. This is, however, a fluid situation and incremental changes in conditions before May 13, 1988 could materially alter this conclusion. In addition, depending on how the facts evolve, the issue of a stay of reparation matters may have to be revisited after May 13, 1988.

### D. *Customers with Judgments*

■ As described earlier, prior to September 30, 1987, the court indicated that it would not then order a stay of all parallel proceedings. The requested stay was at that time a condition of the settlement agreed upon by the representatives of the proposed plaintiff class and the defendants. FCCB subsequently agreed to delete the stay as a condition of the proposed settlement.

The information presented in connection with the motion for a stay, however, did cause the court to be concerned that the pace and amount of judgments which might be obtained before the Notice could be circulated to class members would, as a practical matter, seriously impair the court's authority to determine the viability and desirability of the proposed settlement. While the threat was then too uncertain to persuade the court to stay the parallel proceedings, it was a sufficiently real possibility that the court decided to monitor the payment of judgments, at least in the period prior to the mailing of the Notice. This monitoring also permitted the court to be alert for possibly improper, collusive payments and to determine whether those who had obtained judgments for actual damages after July 15, 1987, were obtaining any unfair advantage over other customers in the class whose claims were not so far advanced.

Accordingly, on October 9, 1987, pursuant to the All Writs Act, FCCB was enjoined from paying final judgments without the prior approval of this court. The court also directed that parties who obtained final judgments against FCCB be informed of this requirement. The Order did not, however, preclude FCCB from settling claims, including those which had gone to judgment.

Since October 9, 1987, the court has received five requests to authorize payments of final judgments in cases involving claims for actual damages. One of these matters has been settled. Each of the remaining claimants obtained his or her judgment after July 15, 1987 and is, therefore, now a member of the two conditionally certified classes. At this point, those individuals may opt-out of the actual damages class and seek to recover on their judgments, or settle the claims relating to them. All other members of the actual damage class now have the same option.

FCCB urges the court to continue the October 9, 1987, injunction against paying judgments without court approval. However, because individuals with final judgments no longer have a possible *unfair* advantage over other customers in the class, it is no longer necessary or appropriate to continue the requirement of court approval for the payment of judgments. Accordingly, the October 9, 1987 injunction is now being vacated.

Individuals with judgments may, if they wish, now opt-out of the actual damage class and seek to collect on those judgments. FCCB may deal with such individuals, as well as others who opt-out. This process may, in some cases, result in the initiation of federal litigation to enforce CFTC reparation judgments pursuant to 7 U.S.C. § 18(d). The court is today ordering that all such actions be decided by this court in order to assure compliance with the requirements imposed by the conditional class certification, and to promote the efficient and consistent consideration of such enforcement actions.

E. *Bankruptcy Proceedings and Attachments*

█ Although the court does not deem a stay of all parallel proceedings to be justified, it is persuaded that it is now necessary and appropriate to require the prior approval of this court for the initiation of bankruptcy proceedings concerning FCCB, and for attachments, injunctions or other efforts to restrict distribution of the $5,300,000 in escrow to fund the proposed settlement. This requirement, imposed pursuant to the All Writs Act, is necessary to protect this court's jurisdiction, and its ability to approve and implement the proposed settlement if such action is warranted.

At this point the defendants settling their claims in this class action appear, after substantial investigation, to have a limited fund of money available to satisfy customer claims and other obligations, including the foreseeable possibility of substantial fines which may be imposed at the conclusion of the pending CFTC enforcement proceedings. *See* Notice, at 296. From this limited fund, $5,300,000 has been escrowed by the settling defendants as a *res* to make the payments required as part of the proposed settlement. Most of this money had been in the possession of the Schleichers, although subject to a disputed claim that it had been fraudulently conveyed to them from FCCB. FCCB may now be liquidating, but the Schleichers are not; rather they appear to be solvent. If the proposed settlement is aborted or not finally approved, the escrow fund is to be returned to the settling defendants. It is not evident, however, whether the bulk of the money will be reacquired by FCCB or by the Schleichers. There is a risk, however, that absent this settlement, much of the $5,300,000 would not be available to satisfy valid customer claims against FCCB because there may be particular difficulties involved if customers attempt to prove the personal liability of the Schleichers.

Thus, at this point there is a *res*, distinct from FCCB, which is fundamental to this settlement. In addition, the Notice establishes a continuing schedule of interdepen-

**292**

dent events which, because notice to more than forty thousand customers would be involved, cannot as a practical matter be altered.

As already demonstrated in this case, a small number of individuals objecting to the proposed settlement could ordinarily initiate involuntary bankruptcy proceedings against FCCB. This would, among other things, impose a stay on all proceedings against FCCB, including this multidistrict litigation.[3] A bankruptcy might also trigger an effort by the Schleichers to reacquire the assets now in escrow to fund the proposed settlement. While this court could, as it did previously, revoke the reference to the Bankruptcy Court and remove any automatic stay, the mere passage of the time necessary to consider and accomplish this could fatally disrupt the delicate balance which the proposed settlement and related schedule represent. Similarly, an attachment or injunction concerning the escrow fund would also seriously impair this court's authority and flexibility with regard to the proposed settlement.

Therefore, on April 18, 1988, it was orally ordered that the prior approval of this court be obtained to initiate bankruptcy proceedings, and attachments or injunctions concerning the escrow fund. This requirement is necessary to aid this court's jurisdiction, to effectuate existing orders, to protect this court's authority to decide whether the settlement should be finally approved, and to protect the *res* established to fund the settlement. It is, therefore, appropriate. *See, James,* 733 F.2d at 993; *In re Baldwin–United,* 770 F.2d at 336; *In re Federal Skywalk Cases,* 680 F.2d 1175, 1181–82 (8th Cir.1982).

The requirement that this court give its prior approval to the initiation of bankruptcy proceedings against FCCB or an attachment or injunction concerning the escrow fund does not mean that such actions will, if requested, ultimately be prohibited. This procedure, however, will allow potential petitioners to be informed of and consider the implications of their proposed actions. More importantly, it will provide this court an opportunity to consider *before* potentially fatal injury is inflicted whether the proposed action is—like the December, 1987 petition for involuntary bankruptcy—vexatious and improper.

If presented with a good faith request to initiate a bankruptcy proceeding, or for an attachment or injunction concerning the escrow fund, the court can decide in the context of concrete facts the relative weight to be given to what may be competing, meritorious considerations. At that time, all of the relevant factors can be argued and assessed. As indicated earlier, however, it is essential that this be done before a misguided or malicious effort succeeds in derailing a settlement which may be the best of a series of unfortunate options for most of the more than 40,000 class members.

## IV. ORDER

In view of the foregoing, it is hereby ORDERED that:

1) FCCB's motion to stay parallel state court litigation and CFTC reparation matters is DENIED;

2) This court's October 9, 1987 Order enjoining FCCB from paying judgments without this court's approval is VACATED;

3) All federal litigation to enforce CFTC reparation judgments pursuant to 7 U.S.C. § 18(d) shall be decided by this court and all individuals with such judgments shall be so informed;

4) No bankruptcy proceeding involving FCCB shall be initiated without the prior approval of this court;

5) No action seeking an attachment, injunction, or other remedy restricting the $5,300,000 in escrow pursuant to the Amended Stipulation of Settlement dated September 28, 1988, shall be initiated or maintained without the prior approval of this court.

---

**3.** Bankruptcy proceedings would also have the effect of staying the CFTC reparations proceedings which FCCB has on several occasions unsuccessfully sought to enjoin.

## EXHIBIT A

In the United States District Court for the District of Massachusetts

IN RE: FIRST COMMODITY CORP. OF BOSTON CUS- )
TOMER ACCOUNTS LITIGATION )
)
ELIZABETH JULKOWSKI, STEPHEN R. HOOGHEEM, )
ALICE L. RILEY, STEPHEN A. KACHAROS, JOHN E. )
AUSTIN, ELIZABETH E. SERNA, DONALD A. )
HUMPHREY, MARLIN DONALD COOK, JR., HENRY E. )
LAWRENCE, and KENNETH G. WUNDERLICH, )
RICHARD J. IRELAND, EDWARD SANFORD )
and MARTIN CHAPMAN, Individually and on behalf of all )
other persons similarly situated, )
)
*Plaintiffs,* ) MDL Docket No. 713
v. ) Hon. Mark L. Wolf
) Judge Presiding
FIRST COMMODITY CORPORATION OF BOSTON, DON )
R. SCHLEICHER, RICHARD A. SCHLEICHER, DAVID A. )
CONNOLLY, DAVID J. AUCELLA, HENDRIK MAAS, ) This Pleading Relates
STEPHEN E. MERESMAN, JAMES M. BRUCHS, JAN Y. ) To: All Actions
BIESIADECKI, HAIG FISHER, RICHARD DANIELS, )
MICHAEL A. COFFEY, AND SCOTT L. STANWOOD, )
*Defendants.* )

### NOTICE OF CLASS ACTION, PROPOSED SETTLEMENT, AND SETTLEMENT HEARING

**THIS NOTICE MAY AFFECT YOUR RIGHTS.
PLEASE READ IT CAREFULLY.**

TO: ALL PERSONS WHO OPENED ACCOUNTS WITH AND INVESTED MONEY THROUGH FIRST COMMODITY CORPORATION OF BOSTON, EITHER DIRECTLY OR THROUGH ITS AGENTS, DURING THE PERIOD DECEMBER 1, 1979 THROUGH APRIL 20, 1987 AND WHOSE INVESTMENTS WERE PARTIALLY OR TOTALLY LOST, THROUGH TRADING LOSSES, COMMISSIONS, FEES OR OTHERWISE ("THE CLASS").

**THE SETTLING DEFENDANTS HAVE AGREED TO CREATE A SETTLEMENT FUND WHICH WILL PROVIDE BENEFITS TO ALL MEMBERS OF THE CLASSES DESCRIBED BELOW IF THE SETTLEMENT IS FINALLY APPROVED BY THE COURT. THE SETTLEMENT FUND IS $5.3 MILLION PLUS INTEREST.**

THE PURPOSE OF THIS NOTICE IS TO ADVISE YOU THAT:
1. YOUR RIGHTS MAY BE AFFECTED BY THE ABOVE–CAPTIONED LAWSUIT WHICH IS PENDING IN THIS COURT AS MDL DOCKET NO. 713.
2. A PROPOSED PARTIAL SETTLEMENT IN THE AMOUNT OF FIVE MILLION THREE HUNDRED THOUSAND DOLLARS ($5,300,000) HAS BEEN REACHED WITH CERTAIN DEFENDANTS.
3. BY ORDER DATED SEPTEMBER 30, 1987, THE COURT HAS CONDITIONALLY CERTIFIED THIS AS A CLASS ACTION FOR PURPOSES OF SETTLEMENT ONLY AND DECIDED THAT THE PROPOSED SETTLEMENT MERITS CONSIDERATION AS A POSSIBLY FAIR, REASONABLE AND ADEQUATE RESOLUTION OF THE PENDING CASES.
4. THE COURT CONDITIONALLY CERTIFIED A PUNITIVE DAMAGE CLASS FROM WHICH NO CLASS MEMBER CAN REQUEST EXCLUSION AND AN ACTUAL DAMAGE CLASS FROM WHICH EXCLUSION CAN BE REQUESTED.
5. TO OBTAIN ANY PAYMENT YOU MUST RETURN A COMPLETED PROOF OF CLAIM AND RELEASE FORM TO THE PROPER ADDRESS, POSTMARKED NO LATER THAN OCTOBER 28, 1988.

6. IF YOU WISH TO OBJECT TO THE PROPOSED SETTLEMENT OR RE-QUEST EXCLUSION FROM THE ACTUAL DAMAGES CLASS, YOU MUST DO SO BY MAY 13, 1988..

7. A HEARING WHETHER THE PROPOSED SETTLEMENT AND PLAIN-TIFFS' COUNSELS' REQUEST FOR ATTORNEYS' FEES AND REIMBURSE-MENT OF EXPENSES SHOULD BE FINALLY APPROVED WILL BE HELD ON JULY 7, 1988 AT 10:00 A.M.

## I.
### Summary

By Order dated September 30, 1987, this Court ruled that this action may, for settlement purposes only, be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all people (excluding settling defendants and their officers, agents and employees) who opened accounts with and invested money through First Commodity Corporation of Boston ("First Commodity") during the period December 1, 1979 through April 20, 1987 and whose investments were partially or totally lost through trading losses, commissions, fees or otherwise.

The Court also decided that the proposed settlement merits consideration as a possibly fair, reasonable and adequate resolution of the pending actions. The Court has scheduled a hearing for July 7, 1988 to consider whether the settlement should be finally approved. As a member of the Class, you may appear, in person or through authorized counsel, and be heard on any aspect of the settlement and object to the class treatment of this action or the fairness of the settlement, provided you adhere to the procedures set forth in Section VI below.

The Court has conditionally certified two classes for settlement purposes only. The first class is the actual damage class and covers claims against First Commodity and it's salespeople for actual losses sustained by investing through First Commodity. The second class is the punitive damage class which includes all claims for multiple and actual damages against the individual settling defendants and for any damages or recovery in excess of actual losses sustained from investing through First Commodity. This includes but is not limited to claims against the settling defendants for punitive damages, treble damages under the Racketeer Influenced and Corrupt Organizations Act, and attorneys' fees.

The Settlement Fund in the sum of $5.3 million has been established. All Class members who do not request exclusion from the actual damage class and who timely file proofs of claims will receive a *pro rata* share of the settlement fund allocated to the actual damage class. All class members who timely file a claim form shall participate and will receive a *pro rata* share of the Settlement Fund allocated to the punitive damage class, even if they have requested exclusion from the actual damage class.

If this Settlement is finally approved, claims of all class members in the punitive damage class will be extinguished whether or not a class member files a claim form or files a request for exclusion from the actual damage class. Under the terms of the Settlement, a class member cannot request exclusion from the punitive damage class.

If the settlement is finally approved by the Court and you timely file a Proof of Claim and Release as described in Section VII below, you will be entitled, as a member of the Class, to receive your proportionate share of the amount available for distribution from the $5.3 million Settlement Fund, based upon (a) the ratio of your Recognized Settlement Claim (as described below) to the total dollar value of claims filed in the punitive damage class and (b) the ratio of your Recognized Settlement Claim to the total value of claims filed in the actual damage class, unless you request to be excluded from the actual damage class in the manner set forth in Section IX below.

**EVEN IF YOU REQUEST EXCLUSION FROM THE ACTUAL DAMAGE CLASS, YOU MAY STILL SHARE IN THE PUNITIVE DAMAGE CLASS IF YOU TIMELY FILE A PROOF OF CLAIM AND RELEASE. WHETHER OR NOT YOU FILE A PROOF OF CLAIM, IF THE SETTLEMENT IS FINALLY APPROVED IT WILL EXTINGUISH ANY CLAIMS YOU MIGHT HAVE FOR MORE THAN ACTUAL DAMAGES.**

## II.
### Summary Of The Litigation

Beginning in 1984, numerous class actions and individual lawsuits were filed through-out the country to recover monetary damages as a result of investment losses incurred by

the public in the purchase and sale of commodity futures contracts through First Commodity and its agents. On December 10, 1986, an Order was entered in *Hoogheem v. First Commodity Corporation of Boston, Donald R. Schleicher, and Richard Schleicher, et al.*, ("Hoogheem"), while that case was pending in the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 86 C 6433. Pursuant to that Order, First Commodity was prohibited from making, and Don R. Schleicher and Richard Schleicher (the owners of First Commodity) were prohibited from accepting, any liquidating distributions or transfers of assets without further order of the Court. Thereafter, on February 11, 1987, the Court in *Hoogheem* entered an Order (1) preventing First Commodity from entering into binding settlements with investors without prior notice to the Court and (2) requiring all subsequent settlements between First Commodity and investors to contain an acknowledgment that, among other things, any such settlement could be subject to a court order in the event of class certification.

Pursuant to an Order of the Judicial Panel on Multidistrict Litigation dated February 13, 1987, some of the actions which were pending in the several United States District Courts were transferred to the United States District Court for the District of Massachusetts for coordinated and consolidated pre-trial proceedings. Other pending actions in the federal district courts were subsequently transferred to the District of Massachusetts for coordinated pre-trial proceedings. The Order entered in *Hoogheem* on December 10, 1986 remains in effect. In addition, on March 20, 1987, the Honorable Mark L. Wolf, the federal judge assigned to preside over all of the coordinated actions, entered an Order restraining the Schleichers from transferring, assigning, conveying, pledging or hypothecating: (a) all funds and assets received directly or indirectly from or through First Commodity since January 1, 1986; and (b) all funds and assets in which the Schleichers have any ownership interest as a result of the use of the funds and assets received directly or indirectly from or through First Commodity since January 1, 1986. That Order has been continued from time to time and remains in effect, except as modified to permit the funding of the Settlement Fund.

On April 20, 1987, plaintiffs filed a First Consolidated Class Action Complaint (the "Consolidated Complaint"). The Consolidated Complaint asserts claims against First Commodity and certain current and former officers and employees of First Commodity for violations of the federal commodities laws, the Racketeer Influenced and Corrupt Organizations Act ("RICO") and various state laws, in connection with an alleged scheme, among other things, to fraudulently induce members of the Class to purchase or sell commodities through First Commodity during the period December 1, 1979 through April 20, 1987 (the "Class Period").

Plaintiffs filed motions requesting that the Court appoint a receiver for First Commodity, take control of its assets, and enter a preliminary injunction restraining the Schleichers from transferring or otherwise disposing of any assets acquired with funds acquired from First Commodity during the Class Period. The settlement described herein was reached before these motions were ruled on by the Court.

Earlier in this action, Plaintiffs' counsel learned, among other matters, that First Commodity had sold substantially all of its assets to Option America, Inc. ("Option") in exchange for a promissory note in the sum of $4 million, the payment of which was to be made from the future profits, if any, of Option. Option also exercised the right to acquire additional assets and branches from First Commodity for a $766,667 contingent note. Both notes were to be paid from the profits of Option. The first payment on the $4 million dollar note was to be made on August 31, 1987, if there was a profit. Plaintiffs' counsel and the Court have been advised that no payment had been made on the notes as of February 18, 1988.

Plaintiffs have learned that the National Futures Association gave notice to Option on February 26, 1988, that it must cease operations and transfer its customer accounts to another futures commission merchant because Option is undercapitalized. On March 4, 1988, Option filed for protection under the federal bankruptcy laws. Based upon these facts, it appears that no payment will be made on the notes.

Plaintiffs also learned that certain, if not all, of the defendants are the subject of three federal Grand Jury investigations which are pending in Chicago, Boston, and California. Plaintiffs cannot obtain any information concerning such investigation from the United States Government while the Grand Jury proceedings continue.

First Commodity has been expelled from the MidAmerica Commodity Exchange ("the MidAm") and a $3.510 million fine was imposed upon it. First Commodity appealed the MidAm's actions to the Commodity Futures Trading Commission ("the CFTC"), a federal agency, which vacated the monetary fine. Upon reconsideration, the MidAm reinstated the fine. As part of the Settlement of this multidistrict litigation, First Commodity has agreed to pay the fine pursuant to a settlement with the MidAm. The MidAm has agreed to contribute $3,010,000 of the fine to help create the Settlement Fund established in this litigation. If this settlement is not finally approved, the MidAm will seek to recover the full $3,510,000 fine. First Commodity has indicated that if such event occurs it will appeal the imposition of the fine and challenge the MidAm's right to impose the fine.

Additionally, in February, 1986, the CFTC began an enforcement action against certain of the defendants. Hearings have commenced and testimony and documentary evidence have been presented. It is likely that those hearings will be protracted and continue throughout 1988. The CFTC is seeking, among other relief, monetary fines in the sum of up to $100,000 for each violation which occurred during the Class Period. The CFTC has indicated that any money which it receives will be placed in the general fund of the U.S. Treasury and will not be used to compensate class members for their losses.

The hearing on Plaintiffs' motions for an injunction and the appointment of a receiver for First Commodity began on June 3, 1987. Plaintiffs presented evidence derived from the MidAm and CFTC proceedings and from various other sources. Plaintiffs also took the sworn depositions of the Schleichers, who refused to answer questions and asserted their constitutional Fifth Amendment rights.

In the course of the hearings, defendants First Commodity, Don R. Schleicher, Richard Schleicher, Stephen Meresman, Hendrik Maas and James Bruchs (collectively, the "Settling Defendants") indicated a desire and willingness to discuss settlement of the action and, thereafter, lengthy and intensive negotiations were undertaken by the parties. During the negotiations, the Schleichers represented that, as of September 9, 1987, the aggregate net worth of themselves and their wives (excluding community property interests of their wives on property acquired prior to 1981, but including community property interests on property acquired after 1981) approximated $9 million, inclusive of the $5,150,000 subsequently paid as part of the Settlement Fund. The Schleichers further stated that First Commodity had no value.

The Settling Defendants have denied all charges asserted against them in the Consolidated Complaint, disclaim any wrongdoing or liability whatsoever, and have asserted various defenses to the claims alleged. Settling Defendants also have vigorously contested that this action is properly certifiable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. No court has yet passed on the merits of either the claims or the defenses. Although Settling Defendants continue to deny all allegations of wrongdoing in this action, they nevertheless state their desire to settle this action on the terms proposed in the Stipulation (as described below) to avoid lengthy and time consuming litigation and the burden, inconvenience, and expense connected therewith.

The settlement negotiations resulted in an Amended Stipulation of Settlement dated September 28, 1987 ("Stipulation"). Acting on the Stipulation, the Court, by Order dated September 30 1987, conditionally certified this as a class action and decided that the proposed settlement merits consideration as a possibly, fair, adequate and reasonable resolution of the litigation. The Court also ordered on October 9, 1987, that no reparation or arbitration judgments could be paid by First Commodity without prior approval of the Court.

Pursuant to the Stipulation, the certified public accounting firm of Seidman & Seidman ("S & S") reviewed the books and records of First Commodity to determine whether the Schleichers' representation that First Commodity had no value was accurate. S & S submitted a written report to Plaintiffs' counsel and the Court. The S & S written report reflects that First Commodity has a negative net worth of approximately $1,133,756 as of June 30, 1987.

As part of the investigation to assure that the Schleichers represented their actual net worth, the certified accounting firm of Laventhol & Horwath ("L & H") was retained by defendants' counsel to verify the Schleichers' representation that their aggregate net worth approximated $9 million as of September 9, 1987, the date on which the Schleichers submitted their sworn net worth statements. The Stipulation provides that if their net worth is more than $11 million, plaintiffs can terminate the settlement or obtain 25% of all amounts over $11 million for the Settlement Fund. L & H submitted written reports to

Plaintiffs' counsel, together with redacted copies of various documents which L & H relied upon in analyzing the Schleichers' net worth. L & H's reports were also submitted to the Court.

While attempting to verify the Schleichers' net worth, Plaintiffs' counsel learned that First Commodity had provided certain funds for Silver Editions, Ltd., a business which is wholly owned by the Schleichers and which sells silver statues. The funds were repaid to First Commodity. The Schleichers placed a net worth value of zero dollars on Silver Editions. After examining the books and records of Silver Editions, L & H concluded that such valuation is reasonable.

In order to test L & H's analysis and conclusions regarding (1) the validity of the Schleichers' valuation of their assets, and (2) whether such assets had been fully disclosed to L & H, Plaintiffs' counsel deposed L & H representatives under oath for approximately three days. An examination was also conducted in open court on January 7, February 5, February 18, and February 21, 1988, when Judge Wolf also questioned L & H representatives concerning the Schleichers' net worth. At the hearing on February 18, 1988, L & H testified that based upon their investigation it appeared that the Schleichers' combined net worth was approximately $9.5 million and in no event exceeded $11 million. On February 18, 1988, Don R. Schleicher and Richard Schleicher also testified under oath concerning the full disclosure of their net worth.

Concurrently with their examination of L & H representatives, Plaintiffs hired an investigator to identify and locate assets which the Schleichers refused to identify on the basis of Fifth Amendment privilege. The investigator located various bank and brokerage accounts belonging to Don R. Schleicher, after which the Court granted Plaintiffs' *ex parte* motion for a temporary restraining order enjoining Don R. Schleicher from transferring any funds from those accounts. Thereafter, on February 18, 1988, the Court conducted an evidentiary hearing at which the Schleichers and a L & H representative testified. After that testimony, Plaintiffs and the Court were able to conclude that (a) the Schleichers appeared to have fully disclosed their assets and liabilities to L & H; and (b) the Schleichers' net worth appeared to aggregate less than $11 million as of September 9, 1987. The temporary restraining order was thus dissolved.

Plaintiffs and the Court, however, required L & H to perform additional analyses in order to satisfy the plaintiffs that the Schleichers' net worth is approximately $9.5 million and in no event more than $11 million. L & H has performed those additional tasks, which have not disclosed any material additions to the assets of the Schleichers.

Plaintiffs have entered into the settlement after taking into account the risks of litigation, the fact that the limited assets of First Commodity, the Schleichers and their wives are insufficient to satisfy all potential claims and because fragmented litigation may result in disproportionate recovery by claimants who obtained judgments early, including possible judgments for more than actual damages, which may substantially exceed First Commodity's and the Schleichers' assets. Plaintiffs are also aware of substantial damage awards which have in the past been entered against First Commodity and have taken into account the possibility that further early large judgments could deplete the limited assets of First Commodity and the Schleichers so that Class Members who later obtain favorable decisions in pending or subsequent proceedings may, therefore, collect little or nothing as a result of those decisions. This would be particularly harsh if early awards of punitive damages depleted the limited assets available to compensate class members for a portion of their actual losses. Additionally, while Plaintiffs believe that they would be successful at a trial on the merits, there are particularly significant risks involved in establishing the personal liability of the Schleichers and the individual Settling Defendants. Furthermore, claims against First Commodity, including judgments obtained in reparation and arbitration proceedings, may be of little or no value because it appears to plaintiffs, based upon extensive discovery, that First Commodity has no appreciable assets. If the settlement is finally approved, class members will receive substantial benefits without further time consuming litigation and expense. Since an exhaustive examination of the Schleichers' aggregate net worth has not disclosed assets exceeding the sum of $11 million, Plaintiffs' counsel have concluded that the settlement provided for herein is in the best interests of Plaintiffs and the Class.

**THE SENDING OF THIS NOTICE IS NOT AN EXPRESSION BY THE COURT OF ANY OPINION AS TO THE LIKELIHOOD OF RECOVERY BY THE PLAINTIFFS OR AS TO THE MERITS OF ANY DEFENSE ASSERTED BY ANY OF THE SETTLING DEFENDANTS. THE COURT HAS PRELIMINARILY INDICATED**

THAT, BASED UPON THE FINANCIAL DISCLOSURES, INVESTIGATIVE PROCE-
DURES, AND EVIDENCE, A LIMITED FUND EXISTS.  THE COURT ALSO CON-
CLUDED THAT THE TERMS OF THE SETTLEMENT SHOULD BE DISSEMINAT-
ED TO THE CLASS FOR CONSIDERATION AS A POSSIBLY FAIR, ADEQUATE
AND REASONABLE RESOLUTION OF CUSTOMER CLAIMS AGAINST SETTLING
DEFENDANTS.  THIS NOTICE IS PROVIDED ONLY SO THAT YOU MAY DECIDE
WHAT STEPS, IF ANY, TO TAKE IN RELATION TO THE PROPOSED SETTLE-
MENT OF THIS ACTION.

## III.
### Settlement Class Action Ruling

By Order of September 30, 1987, and for purposes of settlement only, the Court conditionally ruled that this lawsuit may be maintained as a class action with two classes: one for recovery of punitive damages (including treble damages under RICO and attorneys' fees) in excess of actual losses against First Commodity and all claims and causes of action (including actual and punitive damages) against certain individuals; the other for recovery of actual damages sustained by investing through First Commodity. The Court has certified Elizabeth Julkowski, Stephen R. Hoogheem, Alice L. Riley, Stephen A. Kacharos, John E. Austin, Elizabeth E. Serna, Donald A. Humphrey, Marlin Donald Cook, Jr., Henry E. Lawrence, Kenneth G. Wunderlich, Richard J. Ireland, Edward Sanford, and Martin Chapman as representatives of the two classes conditionally certified.  The Court has also appointed the following attorneys as counsel for the Class:

| | | | |
|---|---|---|---|
| Marvin A. Miller, Esq. | Michael J. Freed, Esq. | Selwyn Zun, Esq. | Robert L. Lieff, Esq. |
| Washlow Chertow & Miller | Much Shelist Freed | Robert W. Gettleman, Esq. | Elizabeth Cabraser, Esq. |
| 30 North Lasalle Street | Denenberg Ament & | D'Ancona & Pflaum | Lieff & Cabraser |
| Suite 3630 | Eiger, P.C. | 30 North LaSalle Street | One Market Plaza |
| Chicago, Illinois 60602 | 200 N. LaSalle Street | Suite 3100 | Steuart Street Tower |
| | Suite 2100 | Chicago, Illinois 60602 | 25th Floor |
| | Chicago, Illinois 60601–1095 | | San Francisco, CA 94105 |

| | | |
|---|---|---|
| Edward F. Haber, Esq. | Donald R. Lolli, Esq. | John E. Hill, Esq. |
| Shaprio, Grace & Haber | Beckett & Steinkamp | Hill Schwartz Stenson |
| 79 Milk Street | 600 Commerce Trust | 722 Montgomery Street |
| Boston, Massachusetts | Building | San Francisco, CA 94111 |
| 02109 | 922 Walnut Street | |
| | Kansas City, Missouri 64199 | |

The classes certified for settlement purposes include all persons, excluding Settling Defendants and their officers, agents, and employees, who opened accounts with and invested money through First Commodity, either directly or through its agents, during the period December 1, 1979 through April 20, 1987 (the "Class Period") and whose investments were partially or totally lost, through trading losses, commissions, fees or otherwise.  More specifically, for purposes of settlement only, the Court conditionally certified the following two settlement classes:

(a) A mandatory class for damages other than actual damages was certified pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure (the "punitive damage class"), consisting of all Class members (i) with respect to all claims (including actual losses) against Don R. Schleicher, Richard Schleicher, Hendrik Maas, Stephen Meresman and James Bruchs (collectively the "Individual Settling Defendants") and (ii) with respect to claims for all damages other than actual losses (e.g. punitive damages, treble RICO damages, attorneys' fees, and costs) against First Commodity and its present and former directors, officers, employees and agents, with the exception of and specifically excluding David Aucella and David A. Connolly;  and

(b) An opt-out class for actual damages certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure (the "actual damage class"), consisting of all Class members with respect to claims for actual losses against First Commodity and First Commodity's salespeople.  David Aucella and David A. Connolly are not parties to this settlement and claimants need not opt out to pursue claims against these defendants.

If you are within the definition of the classes, you are included in both the punitive and actual damage classes.  If the settlement is finally approved, whether or not you have requested exclusion from the actual damage class, you will share benefits allocated to the

punitive damage class and cannot reject those benefits. All of your claims and causes of action for punitive or similar damages will be released and extinguished. You may, however, now reject the benefits of the monetary recovery allocated to the actual damage class by seeking exclusion from that class as discussed below. However, even if you request exclusion from the actual damage class, if the proposed settlement is finally approved, all claims and causes of action will be released and extinguished for any recovery against the Individual Settling Defendants and for any recovery in excess of actual damages from First Commodity and its salespeople.

## IV.
## Terms of the Settlement and Release

The Stipulation provides, among other things, that the sum of Five Million Three Hundred Thousand Dollars ($5,300,000) plus interest ("Gross Settlement Fund"), less attorneys' fees and expenses which may be awarded by the Court, shall be paid for the benefit of the classes, which the Court has certified for purposes of the settlement only. The Stipulation also provides that Settling Defendants may, prior to June 13, 1988, abrogate the settlement if the cost of resolving claims of Class members who seek exclusion from the actual damage class exceeds an agreed level. Subject to Court approval, the Judgment to be entered provides that (1) all members of the punitive damage class and (2) those members of the actual damage class who do not timely request to be excluded therefrom shall release the Settling Defendants of all claims, rights, demands, requests for relief, and causes of action which were alleged in the Consolidated Complaint or which could have been alleged therein arising out of or relating to the subject matter of the Consolidated Complaint. The release will include a release of any such claims which you may have involving your transactions with the Settling Defendants, even those which you may have submitted to arbitration or other similar proceedings instituted by you relating to your transactions with the Settling Defendants. The Judgment, as described more fully in the Proof of Claim and Release attached hereto, to which you are referred, also will provide that Plaintiffs and members of the punitive class and those who do not timely seek to be excluded from the actual damage class shall be permanently enjoined from further instituting or prosecuting such claims, rights, demands, requests for relief and causes of action against the Settling Defendants.

Whether or not you timely request to be excluded from the actual damage class, all claims asserted by you or which you could assert as a member of the punitive damage class shall be released in the Judgment. However, if you timely request exclusion from the actual damage class, the claims you could assert as a member of the actual damage class will not be released and you will be free to pursue, at your own expense, only those claims you may have for actual losses against First Commodity and First Commodity's salespeople.

## V.
## Attorneys' Fees

Class counsel will make an application for attorneys' fees in an amount not exceeding $1.5 million to be paid from the Gross Settlement Fund, and will also request reimbursement of their expenses not exceeding $125,000. As set forth in the Stipulation, the Gross Settlement Fund, less Court-approved attorneys' fees and expenses (the "Net Settlement Fund") shall be available for distribution to the Class. All petitions for attorneys' fees and expenses are subject to Court approval.

Plaintiffs' counsel, after final approval of the settlement, shall have the right to apply for attorneys' fees and costs and expenses incurred in the administration and distribution of the Net Settlement Fund in amounts to be approved by the Court without further notice to the Class. The attorneys' fees requested for services rendered during administration shall be in addition to those sought for services rendered through July 7, 1988 and are not expected to exceed $100,000, plus reasonable expenses.

**FOR A FULL AND COMPLETE DESCRIPTION OF THE TERMS OF THE STIPULATION AND THE APPLICATION FOR ATTORNEYS' FEES, SEE "EXAMINATION OF PAPERS" BELOW.**

## VI.
### Settlement Hearing

The Court will hold a hearing in the John W. McCormack Post Office and Courthouse, Boston, Massachusetts at 10:00 a.m. on July 7, 1988, to determine whether the proposed settlement or any part thereof, including certification of the settlement classes and the other terms set forth in the Stipulation, is fair, reasonable and adequate and should be approved by the Court; whether the action should be dismissed on the merits with prejudice pursuant to the Stipulation; and whether to award Plaintiffs' attorneys' fees and expenses and, if so, in what amount.

Any member of the Class may appear at the hearing in person or through duly authorized counsel and show cause why this action should not be treated as a class action, why the settlement should not be approved, why this class action should not be dismissed as to the Settling Defendants, why an award to Plaintiffs' attorneys of their reasonable fees and expenses should not be made or why any of the terms of the settlement is not fair, reasonable and adequate. However, no such person will be heard and no papers or briefs will be received by the Court unless a written notice of intention to appear, written objections, and any related papers and briefs are filed with:

> Clerk of the United States District Court for the District of Massachusetts
> John W. McCormack Post Office and Courthouse—Room 1409
> Boston, Massachusetts 02109

Copies of such written notice of intention to appear, written objections, papers and briefs must also be mailed or delivered, at the same time as they are mailed or delivered to the Clerk, to:

| | | |
|---|---|---|
| Michael J. Freed, Esquire | **and** | A. Hugh Scott, Esquire |
| **Much Shelist Freed Denenberg** | | **Choate, Hall & Stewart** |
| **Ament & Eiger, P.C.** | | |
| 200 North LaSalle Street | | Exchange Place |
| Suite 2100 | | 53 State Street |
| Chicago, Illinois 60601–1095 | | Boston, Massachusetts 02109 |
| *Counsel for Plaintiffs* | | *Attorneys for Defendants* |

Those papers must be postmarked or hand-filed with the Clerk of the Court on or before May 13, 1988. Class members who support the proposed settlement or who do not object to the terms of the proposed settlement do not need to appear at the hearing or take any other action to indicate their approval.

## VII.
### How To Share in This Settlement Fund and Proof of Claim

If you want to share in the Settlement Fund, you must complete and return a Proof of Claim and Release (or a copy thereof) ("Claim Form") evidencing your transactions through First Commodity during the Class Period. The Claim Form is attached to this Notice. Additional copies of the Claim Form may be obtained by writing to the address indicated below or by photocopying.

Any member of the Class may file a Claim Form and share in the Net Settlement Fund whether or not they have objected to the Stipulation and proposed settlement. **ANY MEMBER OF THE CLASS WHO DOES NOT TIMELY RETURN A COMPLETED CLAIM FORM WILL NOT BE PERMITTED TO SHARE IN THE DISTRIBUTION OF THE NET SETTLEMENT FUND. EXCEPT TO THE EXTENT THAT HIS OR HER CLAIMS ARE PRESERVED BY TIMELY SEEKING EXCLUSION FROM THE ACTUAL DAMAGE CLASS, ANY MEMBER OF THE CLASS WHO DOES NOT TIMELY RETURN A COMPLETED CLAIM FORM WILL BE BOUND BY THE PROPOSED SETTLEMENT AND JUDGMENT ENTERED IN THIS LITIGATION.**

Mail the Claim Form to the following address:

> National Futures Association
> P.O. Box 805446
> Chicago, Illinois 60680–4116
>
> Attn: First Commodity Corp. of Boston Customer Accounts Litigation

Each Claim Form submitted will be reviewed to determine whether or not to allow the claim. If you submit a Claim Form, you may be requested to furnish additional documents to substantiate your claim. Any claimant whose claim is rejected, in whole or in part, shall be mailed written notice rejecting such claim and advising the claimant of

the reasons therefor. By submitting a Claim Form, each Class member will thereby submit himself or herself to the jurisdiction of the Court for purposes of the claim and the Court will finally resolve any disputes relating to all claims.

The Claim Form must be postmarked on or before October 28, 1988. In the event that the Stipulation is disapproved or is not consummated for any reason, any Claim Forms that have been received will be null and void.

## VIII.
### Your Share Of The Settlement Fund

Each member of the Class who files a timely and valid Claim Form which is approved by the Court is entitled to share in the distribution of the Net Settlement Fund. The Net Settlement Fund shall be allocated to the punitive damage and actual damage classes as follows: One-fourth (¼) of the Net Settlement Fund shall be allocated to the punitive damage class, and three-fourths (¾) of the Net Settlement Fund shall be allocated to the actual damage class.

There shall be allocated and distributed to each member of the Class who timely files a Claim Form a *pro rata* share of the amount available for distribution to the punitive damage class. Each member of the actual damage class who does not timely seek exclusion therefrom and who timely files a Claim Form will be allocated and distributed a *pro rata* share of the amount available for distribution to the actual damage class. The *pro rata* share of each Class member shall be calculated as follows:

(a) *The Punitive Damage Class.* There shall be allocated and distributed to each member of the punitive damage class a *pro rata* share of the amount available for distribution to the punitive damage class, determined by the ratio that such class member's Recognized Settlement Claim bears to the total Recognized Settlement Claims; and

(b) *The Actual Damage Class.* There shall be allocated and distributed to each member of the actual damage class who does not timely seek exclusion therefrom a *pro rata* share of the amount available to the actual damage class, determined by the ratio that such class member's Recognized Settlement Claim bears to the total Recognized Settlement Claims.

A Class member's "Recognized Settlement Claim" is the excess of (a) the total dollar amount paid to First Commodity (including management fees and commissions) by a member of the Class during the Class Period minus (b) the total dollar amount received directly or indirectly from First Commodity by a member of the Class during the Class Period. Recognized Settlement Claim shall not include (i) any transactions with respect to which a Class member received a final judgment (as defined in paragraph 21 of the Stipulation) against or a court-approved settlement with any of the Settling Defendants on or before July 15, 1987; (ii) any transactions resulting in a judgment or settlement for which a Class member received payment or executed a release of the Settling Defendants during the Class Period; (iii) any transactions with respect to which a Class member has received an adverse administrative, arbitration or court decision at the trial level and which has not been reversed on appeal; and (iv) any transactions with respect to which a Class member has made a settlement with First Commodity after September 23, 1987, pursuant to settlement authority granted to First Commodity as described in paragraph 19 of the Stipulation.

Since Plaintiffs' counsel have learned that there may be approximately 42,000 members of the Class, and because it is not known how many claims there are, the aggregate dollar amount of claims that will be filed, or the amount of attorneys' fees and expenses the Court will award Plaintiffs' Counsel, no calculation can now be made of the percentage of loss that each Class member will recover.

## IX.
### Request For Exclusion From Rule 23(b)(3) Actual Damage Class

As a member of the Class, you are automatically a member of the punitive damage class and shall be bound by any Judgment entered by the Court with respect to the punitive damage class even if you opt out of the actual damage class. However, you have a choice whether or not to remain a member of the actual damage class. Either choice will have its consequences, which you should understand before making your decision.

If you want to be excluded from the actual damage class, you must request exclusion by writing to:

First Commodity of Boston Customer Accounts Litigation
P.O. Box 4514
J.W. McCormack Station
Boston, MA 02101

"Request for Exclusion" should be marked on the outside of each envelope containing a written request for exclusion (the "Exclusion Request"). The Exclusion Request must be postmarked on or before May 13, 1988, and must set forth (a) your name, address and telephone number; (b) the date when you opened an account with and invested through First Commodity; (c) your account number; (d) a specific request that you be excluded from the actual damage class; and (e) if you are represented by an attorney in the matter, the attorney's name, address and telephone number.
**ALTHOUGH YOU MAY BE A PLAINTIFF OR CLAIMANT IN ANOTHER PROCEEDING (A CIVIL ACTION, REPARATION PROCEEDING OR ARBITRATION) REGARDING THE SAME SUBJECT MATTER AS THE MDL 713 LITIGATION, YOU ARE NOT EXCLUDED FROM THE ACTUAL DAMAGE CLASS UNLESS YOU TIMELY MAIL AN EXCLUSION REQUEST AS SET FORTH ABOVE. YOU HAVE THE RIGHT TO PARTICIPATE IN THE SETTLEMENT AS IT RELATES TO THE ACTUAL DAMAGE CLASS BY NOT REQUESTING TO BE EXCLUDED FROM THAT CLASS. IF YOU DO NOT REQUEST EXCLUSION FROM THE ACTUAL DAMAGE CLASS AND THE SETTLEMENT IS FINALLY APPROVED, YOUR RIGHT TO PURSUE CLAIMS FOR ACTUAL DAMAGES WILL BE EXTINGUISHED.**
By properly mailing an Exclusion Request in the manner set forth above, you will be excluded from the actual damage class. Anyone who excludes himself or herself from the actual damage class in the manner specified above will NOT share in the benefits of the settlement allocated to the actual damage class, and will not be bound by any Judgment concerning the actual damage class which may be rendered by the Court pursuant to the settlement, but will be free to pursue, at the person's own costs, whatever rights, if any, that person may have for actual damages against First Commodity and First Commodity's salespeople. Anyone who excludes himself or herself from the actual damage class should take into account the financial condition of First Commodity and those persons against which he or she may have claims, the benefits he or she will forego if excluded from the actual damage class, as well as the probabilities of success or failure in securing and satisfying a judgment for actual damages against First Commodity or First Commodity's salespeople.
**IF YOU WANT TO REMAIN A MEMBER OF THE ACTUAL DAMAGE CLASS, YOU SHOULD NOT FILE THE EXCLUSION REQUEST AND YOU ARE NOT REQUIRED TO DO ANYTHING AT THIS TIME. YOU WILL, HOWEVER, HAVE TO FILE THE ATTACHED CLAIM FORM NOT LATER THAN OCTOBER 28, 1988. ANY MEMBER OF THE ACTUAL DAMAGE CLASS WHO DOES NOT MAKE A TIMELY REQUEST FOR EXCLUSION IN THE MANNER SET FORTH ABOVE SHALL BE BOUND BY ANY JUDGMENT RENDERED BY THE COURT WITH RESPECT TO THE ACTUAL DAMAGE CLASS PURSUANT TO THE SETTLEMENT.**
**ANY MEMBER OF THE ACTUAL DAMAGE CLASS WHO MAKES A TIMELY REQUEST FOR EXCLUSION IN THE MANNER SET FORTH ABOVE SHALL REMAIN A MEMBER OF THE PUNITIVE DAMAGE CLASS, *MUST* TIMELY FILE A PROOF OF CLAIM TO SHARE IN THE SETTLEMENT ALLOCATED TO THE PUNITIVE DAMAGE CLASS, AND SHALL BE BOUND BY ANY JUDGMENT RENDERED BY THE COURT WITH RESPECT TO THE PUNITIVE DAMAGE CLASS PURSUANT TO THE SETTLEMENT.**

### X.
### Representation by Counsel and Further Proceedings

As a member of the Class, you may communicate with, seek the advice of, or enter an appearance through counsel of your own choice. Any member of the punitive damage class and any member of the actual damage class not requesting exclusion therefrom who does not enter an appearance either individually or through his or her own counsel will be represented by counsel for the settling Plaintiffs, who are proponents of the settlement, and will have no individual liability for attorneys' fees and costs, both of which will be payable from the Gross Settlement Fund.

If the Stipulation and settlement are not approved, the case will continue to be prepared for trial. Plaintiffs' counsel cannot estimate a trial date, as discovery and other pretrial proceedings remain to be conducted. Depending on the results of the trial, further proceedings may be necessary before the case is finally resolved.

## XI.
### Examination Of Papers

For a more detailed statement of the matters involved in this litigation, you are referred to the papers on file with the Court, including the Stipulation and application of plaintiffs and Class counsel for attorneys' fees. These papers may be inspected during regular business hours at the Office of the Clerk of the United States District Court for the District of Massachusetts, John W. McCormack Post Office and Courthouse, Room 1409, Boston, Massachusetts 02109.

**PLEASE DO NOT CALL OR WRITE THE COURT DIRECTLY. IF YOU HAVE ANY QUESTIONS CONCERNING THE NOTICE OR THE CLAIM FORM, CONTACT THE NATIONAL FUTURES ASSOCIATION AT P.O. BOX 805446, CHICAGO, ILLINOIS 60680–4116 OR TELEPHONE NUMBER 312–781–1469.**

## XII.
### Reminder as to Time Limits

If, as a Class member, you want to object to any aspect of the proposed settlement, file your written notice of intention to appear at the Settlement Hearing, written objections, and any related papers and briefs with the Clerk of the United States District Court for the District of Massachusetts, postmarked or hand-filed on or before May 13, 1988, with copies of the documents delivered to counsel for Plaintiffs and Defendants, as set forth in Section V above.

If you desire to share in the Settlement Fund as a member of either the actual damage class or the punitive damage class, your Claim Form must be postmarked on or before October 28, 1988, as set forth in Section VII above.

If you desire to be excluded from the actual damage class, return an exclusion request by mail postmarked before May 13, 1988.

The Court reserves the right to extend any or all of the dates and times set forth in this Notice for good cause shown.

Dated: March 24, 1988

ROBERT J. SMITH JR.
CLERK
UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In the United States District Court for the District of Massachusetts

IN RE: FIRST COMMODITY CORP. OF BOSTON CUS-)
TOMER ACCOUNTS LITIGATION )
)
ELIZABETH JULKOWSKI, STEPHEN R. HOOGHEEM, )
ALICE L. RILEY, STEPHEN A. KACHAROS, JOHN E.)
AUSTIN, ELIZABETH E. SERNA, DONALD A. )
HUMPHREY, MARLIN DONALD COOK, JR., HENRY E.)
LAWRENCE, and KENNETH G. WUNDERLICH, )
RICHARD J. IRELAND, EDWARD SANFORD )
and MARTIN CHAPMAN, Individually and on behalf of all)
other persons similarly situated, )
*Plaintiffs,*)　　MDL Docket No. 713
v. )　　Hon. Mark L. Wolf
)　　Judge Presiding
FIRST COMMODITY CORPORATION OF BOSTON, DON)
R. SCHLEICHER, RICHARD A. SCHLEICHER, DAVID A.)
CONNOLLY, DAVID J. AUCELLA, HENDRIK MAAS, )　　This Pleading Relates
STEPHEN E. MERESMAN, JAMES M. BRUCHS, JAN Y.)　　To: All Actions
BIESIADECKI, HAIG FISHER, RICHARD DANIELS, )
MICHAEL A. COFFEY, AND SCOTT L. STANWOOD, )
*Defendants,*) ·

## PROOF OF CLAIM AND RELEASE

PURSUANT TO THE ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS ("THE COURT"), DATED MARCH 24, 1988, IN ORDER TO RECEIVE ANY PAYMENTS TO WHICH YOU MAY BE ENTITLED AS A CLASS MEMBER, YOU MUST COMPLETE AND SIGN THIS PROOF OF CLAIM, AND MAIL IT BY PRE-PAID, FIRST-CLASS MAIL, POSTMARKED NO LATER THAN OCTOBER 28, 1988 TO THE FOLLOWING ADDRESS:

> National Futures Association
> P.O. Box 805446
> Chicago, Illinois 60680-4116
> Attn:    First Commodity Corp.
>             Customer Accounts Litigation

YOUR FAILURE TO SUBMIT THIS PROOF OF CLAIM BY OCTOBER 28, 1988 WILL SUBJECT YOUR CLAIM TO REJECTION AND PRECLUDE YOU FROM RECEIVING ANY MONEY IN CONNECTION WITH THE SETTLEMENT OF THIS LITIGATION.   A PROOF OF CLAIM WILL BE DEEMED SUBMITTED WHEN POSTMARKED, OR, IF SUBMITTED OTHERWISE THAN BY FIRST-CLASS MAIL, ON THE DATE ACTUALLY RECEIVED.

IN ORDER TO PARTICIPATE IN THE SETTLEMENT OF THIS CASE YOU MUST HAVE OPENED AN ACCOUNT WITH AND INVESTED MONEY THROUGH FIRST COMMODITY CORPORATION OF BOSTON ("FIRST COMMODITY"), EITHER DIRECTLY OR THROUGH ITS AGENTS, DURING THE PERIOD FROM DECEMBER 1, 1979 THROUGH APRIL 20, 1987 (THE "CLASS PERIOD").

IF YOU HAVE ANY QUESTIONS REGARDING THIS PROOF OF CLAIM, YOU MAY CONTACT LISA B. HORNSTROM OF THE NATIONAL FUTURES ASSOCIATION AT (312) 781-1469.

I.   By submitting this Proof of Claim, I state that I believe in good faith that I am a Class member as defined in the Notice of Pendency of Class Action, Proposed Settlement of Class Action and Settlement Hearing ("Notice"), or am acting for such Class member; that I have read and understand the contents of the Notice; that I am not acting for Settling Defendants; that I believe that I am entitled to receive a share of the Net Settlement Fund; and that I desire to participate in the proposed Settlement described in the Notice.

II.   I have set forth below the total dollar amount which I paid to First Commodity during the Class Period and the total dollar amount which I received directly or indirectly from First Commodity during the Class Period, as well as information relating to any judgment, award or settlement.

III.   I understand that the information contained in this Proof of Claim is subject to such verification as the Court may direct and I agree to cooperate in any such verification.   I also understand that failure to provide any such verification which may be requested may result in the disallowance of my claim.   I further agree and understand that if the proposed Settlement is approved by the Court and becomes effective, all claims against any or all Settling Defendants which have been or could have been asserted relating to the subject matter of the complaints and the First Consolidated Class Action Complaint (the "Consolidated Complaint") will be satisfied, discharged and extinguished forever as set forth in paragraph IV below.

IV.   Claimant agrees that if the settlement is approved by the Court, all claims and requests for relief which were asserted in the complaints or the Consolidated Complaint or which might have been asserted therein by reason of, or in connection with, any of the matters referred to in any of the pleadings herein against any of the following defendants, First Commodity Corporation of Boston (and its present and former directors, officers, employees and agents, but specifically excluding David Aucella and David Connolly, who are not parties to this settlement), Don R. Schleicher, Richard Schleicher, Stephen Meresman, Hendrik Maas and James M. Bruchs ("Settling Defendants"), shall be released, except that, if Claimant timely seeks exclusion from the class certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure (the "actual damage class"), Claimant may pursue, at Claimant's own cost, whatever

rights he, she or it has for actual damages (that is, out-of-pocket losses plus any interest allowed by law) against First Commodity and First Commodity's salespeople. David Aucella and David Connolly are not parties to this settlement and Claimant need not opt out to pursue claims for all damages allowed by law against these defendants. Except to the extent that Claimant has timely requested exclusion from the actual damage class and retains the right to seek actual damages against First Commodity and First Commodity's salespeople, Claimant's signature on this Proof of Claim form constitutes a full and complete release, remise and discharge by Claimant and by his or her heirs, executors, administrators, successors, and/or assigns, if any, under the aforesaid Settlement of, and an injunction and bar against instituting or prosecuting either directly or indirectly against each of the Settling Defendants, any manner of actions, and causes of action, suits, arbitrations, reparations, obligations, debts, demands, agreements, promises, liabilities, controversies, costs, expenses, and attorneys' fees whatsoever, including, but not limited to, any actions for disgorgement, whether based on federal or state law or right of action, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, which Claimant had, has, or may hereafter have against Settling Defendants, or any of them, for, by reason of, or arising from or in any way based on, connected with or related to the facts, circumstances, transactions, or occurrences alleged or which could have been alleged directly or indirectly in the complaints in the above-captioned actions, or the Consolidated Complaint herein including the purchase or sale of any commodities through First Commodity during the period from December 1, 1979 through April 20, 1987, inclusive.

V. STATEMENT OF CLAIMS (Please type or print the information requested below.)

A. IDENTITY OF CLAIMANT(S)

Name: _____

Name: _____

Address: _____

City: _____ State: _____ Zip Code: _____

Country: _____ Telephone Number: (   ) _____

Social Security or Tax Identification Number: _____

First Commodity Account Number: _____

B. STATUS OF CLAIMANT (Check appropriate box and fill in the applicable blanks below).

☐ 1. **Individual Claimant:** I am a claimant acting in my own interest.

☐ 2. **Joint Claimants:** We are claimants acting jointly.

☐ 3. **Corporate Claimant:** I am the _____ of _____, a corporation whose address is _____ and I am authorized to make this claim on its behalf.

☐ 4. **Partnership Claimant:** I am a partner of _____, a partnership; our business address is _____ and I am authorized to make this claim on behalf of the partnership.

☐ 5. **Decedent's Estate Claimant:** I am the executor or administrator of the Estate of _____ (deceased), whose last address was _____, [Executors and Administrators must annex copies of currently effective letters testamentary of an appropriate court showing the authority to act as such.]

☐ 6. **Custodial Claimant:** I am the custodian for _____, whose address is _____.

☐ 7. **Nominee, Agent, Fiduciary or Attorney Claimant:** I am the nominee/agent/fiduciary/attorney (underscore applicable title) of _____ _____, whose address is _____. [An appropriate executed power of attorney or other proof of authority must be submitted with this Proof of Claim.]

☐ 8. **Guardian Claimant:** I am the guardian for _____ an incompetent/minor (underscore applicable title) whose address is _____ _____. [Guardians must annex copies of currently effective orders of an appropriate court, showing their authority to act as such.]

☐ 9. **Other:** _____
(Please indicate)

C. IDENTITY OF CLASS PARTICIPATION (Check the appropriate box).

☐ 1. Please calculate my Recognized Settlement Claim for purposes of both the Rule 23(b)(1) mandatory punitive damage class and the Rule 23(b)(3) actual damage class.

☐ 2. I have filed an exclusion from the actual damage class. Please calculate my Recognized Settlement Claim for purposes the Rule 23(b)(1) mandatory punitive damage class only.

D. INFORMATION REGARDING RECOGNIZED SETTLEMENT CLAIM
(Provide the following information requested below. Documentation of such information may be required. In the event documentation is requested, failure to provide sufficient documentation at that time may result in disallowance of your claim.

| TOTAL DOLLAR AMOUNT PAID TO FIRST COMMODITY DURING THE CLASS PERIOD (Include initial investment, management fee and any additions made to your account during the Class Period) | TOTAL DOLLAR AMOUNT RECEIVED EITHER DIRECTLY OR INDIRECTLY FROM FIRST COMMODITY DURING THE CLASS PERIOD (Include all payments from First Commodity *except* payments received as a result of a judgment, award or settlement) |
| --- | --- |
| | |

E. PRIOR AWARDS, JUDGMENTS, SETTLEMENTS OR ADVERSE DECISIONS (Check the appropriate box(s), if applicable, and provide the requested information).

1. I obtained an award or judgment against the Settling Defendant(s).
   ☐ Yes   ☐ No
   If yes, answer items (a) through (h) below.
   a) Name of Settling Defendant(s) against whom award or judgment was entered. _____
   b) Name of case in which award or judgment was entered. _____
   c) Name of court, administrative or self-regulatory body involved. _____
   d) Date of award or judgment. ___/___/___
   e) Amount of award or judgment. $_____
   f) Did you receive payment on the award or judgment?
      ☐ Yes   ☐ No
   g) If so, when? ___/___/___
   h) Amount of award or judgment paid to you. $_____

2. I obtained a settlement of claims against the Settling Defendant(s).
   ☐ Yes   ☐ No
   If yes, answer items (a) through (f) below.
   a) Name of Settling Defendant(s) involved in settlement. _____
   b) Name of case, if any, in which settlement was obtained. _____
   c) Date of settlement. ___/___/___
   d) Did you receive payment of the settlement?
      ☐ Yes   ☐ No
   e) If so, when?___/___/___
   f) Amount of settlement received. $_____

3. In a case involving the Settling Defendant(s), I received an adverse administrative, arbitration or court decision which has not been reversed on appeal.
   ☐ Yes   ☐ No
   If yes, answer items (a) through (e) below.

a) Name of Settling Defendant(s) involved in case. _____

b) Name of case in which adverse decision was rendered. _____

c) Name of court, administrative or self-regulatory body involved. _____

d) Date adverse decision was rendered. ___ / / ___

e) Is this matter on appeal?
   ☐ Yes    ☐ No

I certify under penalty of perjury that to the best of my knowledge, information and belief, the information on this claim form (and any attachments thereto) is true and correct and that this is the only claim being made with respect to this matter.

Dated: _____, 1988

_____

_____

**Name(s) of Claimant(s)**

YOU MUST MAIL THIS PROOF OF CLAIM NO LATER THAN OCTOBER 28, 1988

EXHIBIT B

**NATIONAL FUTURES ASSOCIATION**

200 W. MADISON ST•CHICAGO, IL•60606•(312) 781-1300

Ms. Harriet Schock
327 North Orange Dr.
Los Angeles, CA 90036

Re: 87–ARB–134—Schock v. First Commodity Corp. of Boston

Dear Ms. Schock:

As you may be aware, currently a class action on behalf of certain former customers of First Commodity Corporation of Boston ("FCCB") is pending before Judge Mark L. Wolf in the federal district court in Boston, Massachusetts. On September 30, 1987, for settlement purposes only, Judge Wolf certified a class of all persons (excluding settling defendants and their officers, agents and employees) who opened accounts and invested money with FCCB during the period December 1, 1979 through April 30, 1987 and whose investments were partially or totally lost through trading losses, commissions, fees or otherwise. Specifically, Judge Wolf certified an actual damage class which covers claims against FCCB and its salespeople for actual losses sustained by investing through FCCB. The Court has ordered that former FCCB customers must decide whether they wish to participate in the actual damage class by May 13, 1988. Those former FCCB customers who decide to participate in the actual damage class must agree to release the settling defendants from any such claims which they may have against them, even those which the former customers may have submitted to arbitration or other similar proceedings.

Judge Wolf also conditionally certified a mandatory damage class which includes all claims for multiple and actual damages against certain individual settling defendants and for any damages or recovery in excess of actual losses sustained by investing with FCCB. Enclosed for your review is the Notice of Class Action which describes in greater detail the nature and status of the class action. We encourage you to read the Notice thoroughly.

As indicated in the Notice, FCCB and the plaintiff class representatives agreed to settle the class action for $5.3 million in September, 1987. Judge Wolf decided that the proposed settlement merited consideration as a possible fair, reasonable and adequate resolution of the pending action and therefore scheduled a hearing for July 7, 1988 to consider whether the settlement should be finally approved.

On March 28, 1988, FCCB filed motions for a temporary restraining order ("TRO") and for a temporary stay of all NFA arbitration hearings, Commodity Futures Trading Commission ("CFTC") reparation proceedings and other pending state and federal actions in which FCCB or its employees are named as parties. FCCB argued that a stay of such proceedings until July 7, 1988, was required in order to preserve the ability of the parties to effectuate the proposed settlement, to secure the fund of money created by the Court for that settlement, to prevent the harmful dissipation of assets of FCCB and of its former customers in duplicative parallel litigation, and to assure the fair and simultaneous apportionment of the limited settlement fund. NFA filed a brief opposing FCCB's motions.

Although Judge Wolf did not grant FCCB's motions, he requested NFA and the CFTC to consider voluntarily continuing their respective upcoming proceedings. The Judge indicated that a continuance of the pending hearings was necessary so that former FCCB customers could properly consider whether to participate in the class settlement without having to be concerned about preparing for their upcoming arbitration or reparation hearings.

In an effort to comply with Judge Wolf's request and in the interest of allowing NFA arbitration claimants a full opportunity to consider the propriety of participating in the class action settlement, NFA has agreed to voluntarily continue the arbitration hearings scheduled during the next several weeks. If, however, after having analyzed the Notice of the Class Action, you nevertheless decide that you wish to opt-out of the actual damage class and therefore proceed with the scheduled arbitration, please contact Cindy Cain at (312) 781–1490 by no later than April 20, 1988. If we do not hear from you by that date, the hearing will be continued. NFA will contact you shortly thereafter regarding the rescheduling of the hearing.

If you have any questions regarding this matter, please feel to contact me at (312) 781–1413.

Very truly yours,
/s/ Joan Protess
Joan Protess
Attorney

JP:jm
D2:F52
cc: First Commodity Corp. of Boston